### THE CASTENET.

(District Court, N. D. New York. March 2, 1914.)

MARITIME LIENS (§ 37*)—SUIT FOR ENFORCEMENT—VALIDITY AND PRIORITIES.
Various claims for liens on a libeled steamer for wages, supplies, and on mortgages considered, and determined, with their priorities.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 58–70; Dec. Dig. § 37.*]

In Admiralty. Suit by Walter L. Visger, Walter S. Visger, and Kenneth Visger, by his guardian ad litem, against the steamer Castenet, to recover seaman's wages. Decree establishing and foreclosing liens.

White & Stanley, of Buffalo, N. Y., for libelants.

John Conboy, of Watertown, N. Y., for George H. Burtch, lienor.

RAY, District Judge.   Carrie E. Visger is the wife of Walter L. Visger and the mother of Walter S. Visger and Kenneth Visger, the libelants, and the owner of the steamer Castenet running for several years among the Thousand Islands, St. Lawrence river, a vessel some 110 feet in length and of 16-foot beam, measuring some 54 tons.

On or about August 1, 1910, Carrie E. Visger borrowed of Francis Wilson of Philadelphia, Pa., the sum of $1,500, the payment of which was secured by a first mortgage on the Castenet.   September 1, 1910, $300 was paid thereon, and no other payments have been made.   This mortgage draws interest at the rate of 6 per cent.   On the same day, August 1, 1910, Carrie E. Visger gave a second mortgage upon the boat to J. Frank La Rue of Philadelphia, Pa., to secure the sum of $300, due him for legal services.   This draws interest at the rate of 6 per cent., and no part of it has been paid.   These mortgages were duly recorded.

During the season of 1912, George H. Burtch of Alexandria Bay, N. Y., furnished coal and other necessary supplies and materials for use in running the boat, and filed liens therefor.   Thereafter, with the consent of the owner and prior mortgagees, these liens were canceled and in consideration therefor on the 1st day of July, 1913, said Burtch took a mortgage on the Castenet for $782.94, and it was agreed by all the parties that this should be a first mortgage on said boat.   This was done to enable the boat to be operated during the season, as otherwise Burtch would have had to foreclose his liens and sell the boat. This mortgage draws interest at the rate of 6 per cent.

On or about the 6th day of July, 1913, Walter L. Visger, the husband of Carrie E. Visger, the owner, and who represented her, said La Rue, John T. De Laney, representing Mr. Burtch, and said Burtch met by appointment at Alexandria Bay, and it was there agreed that Burtch would furnish the paints, etc., necessary to fit out the boat for running the season of 1913, and also a few of her first coalings until the boat was well started.   It was agreed by said Walter L. Visger in behalf of himself and Carrie E. Visger that if Burtch would permit the boat to be run the season of 1913, he would pay Burtch all of the expense or indebtedness necessary for the running of the boat for that season, 1913, and would apply the surplus of the earnings of the boat upon the interest upon the mortgages, and also in reduction of the principal, so far as possible.   Burtch permitted the boat to run, but was not paid for the supplies furnished by him.   On the 26th day of August, 1913, Burtch filed a lien on the Castenet for coal, wood, and fitting-out supplies, in the sum of $286.33.   August 26, 1913, Thomas Thurston filed a lien on said boat for $37.50, and on the same day Olin Snyder filed one for $35.   These were duly assigned to Burtch, making his claim on such three liens $358.83.   In September, 1913, said George H. Burtch duly filed a libel against said Castenet, her boilers, etc., for that sum.   On the 11th day of September, 1913, William Morford filed a lien on said boat for $31 for seaman's wages, and October 14, 1913, Cornwall Bros. filed a lien thereon for dockage in the sum of $25.   January 6, 1914, and during the trial of that case, libels were filed on such liens.

At the close of the season of 1913, and on or about September 1, 1913, said Walter L. Visger laid up the said boat at Ivy Lea, Canada, and stripped her. Later it was agreed between the Visgers and Mr. Burtch that Burtch should go to Canada and bring the boat to Alexandria Bay, where she should be sold under the libel so filed by said Burtch. On the 25th day of September, 1913, pursuant to said agreement, Burtch, John T. De Laney, and Snyder brought the boat back from Canada to Alexandria Bay. She was advertised for sale, and all necessary things were done to protect her while in the possession of Mr. Burtch. Mr. Burtch thereafter filed a bill of his expenses under and pursuant to the enforcement of his libel, amounting to the sum of $115.43. On the 5th day of November, 1913, and before any sale of the said boat Castenet under the Burtch libel, or otherwise, Walter L. Visger, Walter S. Visger, and Kenneth Visger filed a libel against said boat for wages claimed to be due and unpaid to them, respectively, for seamen's wages earned during the season of 1913, and from March to about September, 1913. Walter L., the husband of the owner, claims wages due him to the amount of $360.50, Walter S. claims wages due him to the amount of $120, and Kenneth Visger claims wages due him to the amount of $313, making a total, claimed by the three, of $793.50.

The contention of these libelants is that in February or March, 1913, in the city of New York, it was agreed between Carrie E. Visger and the husband and sons that they would run the boat the coming season, and that Walter L., the husband, should be paid $3.50 per day, Walter S., the oldest son, then 26 years of age, $2.50 per day, and Kenneth Visger, then 17 or 18 years of age, $75 per month. The boat commenced running July 26, 1913, and the last trip was August 31, 1913, and hence Kenneth, if such an agreement was made, worked one month and five days and earned $87.05. August 8, 1913, he was paid $5, August 13, $10, August 19, $15, August 31, $15, and September 2, $17. This was paid by the father, Walter L., and all of them testify that the mother also paid him at one time $70 in seven $10 bills, and that he gave back $8. This was presumptively in settlement of all claims. Conceding that he did some work in getting the boat ready and laying her up, he was paid for all he did, and I so find. There was put in evidence a Weekly Time Book, The Castenet, 1913, Exhibit A, in which Walter L. claims to have kept the time of those working in cutting out and getting the boat ready for the season. The first entries are under date of "Sat. April 12, 1913," and the last Saturday July 19, 1913, except this entry, "Wednesday July 23, '13. Went to Alex. Bay with Castenet." In this book the name of Kenneth Visger does not appear, and it is evident that he did no work until the boat commenced running, and he was not hired to work on this boat as a seaman, or in any other capacity, if hired at all, until she did commence running. It was not competent to hire Kenneth in February or March, 1913, as a seaman on the Castenet at $75 per month, nothing being done by him until she commenced running, and charge up $75 per month for April, May, June, and July, prior to the 26th, when he was doing nothing, and libel the boat therefor as against others.

There is some evidence that he did some work at odd spells prior to July in painting, although he was not a painter, etc., and perhaps he did, but the evidence is conclusive that he was fully paid for all he did on or in and about this boat. He sold many tickets and collected fares, and in this way was in constant receipt of money.

A book, Exhibit B, purporting to have been kept by the husband and father, is in evidence, but I give it little credit, as it is self-evident that it was all made up at one time, except some pencil memorandums, in the same ink. This is accentuated by the fact that the names of the employés do not come in the order they would if the names and accounts had been entered as they were employed and paid, and as the transactions occurred. For instance, at the top of the third page containing individual accounts we find, "Capt. S. Lee, 1913, Sunday, Aug. 10th, began work at $3.25 per day." At the top of the next page is "Frank Roberts, 1913, Began work Aug. 4th, at $25.00 per month." On the next page but one we find "D. La Rue, 1913, Began work Aug. 12, at $2.00 per day and board," and a first debtor charge of August 23, while on the next page appears the account of "Kenneth Visger, 1913," and a first debtor charge of "Aug. 8, Cash $5.00," etc. Three pages later comes the account of Walter S. Visger, the elder son, which contains credit entries for work, commencing in March and ending in July, and which also has a debtor charge $10 and $116.25 (afterwards erased) just balancing the credit accounts for work. This account on its face shows that Walter S. Visger was credited with all his work for March, April, May, June and July, amounting to $126.25, and then charged with cash in full payment, which charge was erased. I have no doubt that Walter S. Visger was fully paid for all he did, and so find. We then come to the claim of Walter L. Visger, the father. He kept these accounts, or rather made up these books. In Exhibit B he kept no account with himself, except on the first page, under "Castenet," is entered evidently all entries having been made at the same time, a sort of summary of payments, and the last entry is "Paid Walter Visger, Sr., 10 days, Captain at $5.00, $50.00." When Walter L. Visger started in the season of 1913, aside from what he may have done in fitting out the boat, it was as captain. After some days his license was taken from him, and he claims to have acted as a sort of general helper. It is conceded that for services as captain he can have no lien. If he was employed by Mrs. Visger at all, it was as captain. Under the alleged employment, if any, he cannot recover anything here. He concedes he had no agreement that he was to have $5 per day as captain. But it is contended that he did some work in getting out and fitting up the boat prior to July 26th, when she was taken to Alexandria Bay and commenced running, and that after he lost his license he worked as a general assistant or seaman in running the boat with the knowledge of Mrs. Visger, his wife, and that he should be paid, and that there is no evidence he was paid anything for such work. The earnings of the boat all went into and through his hands, if in fact Kenneth Visger paid over the sums collected by him. In the time book referred to there are entries made by Walter L. Visger, which he

claims are correct, showing work on this boat done by himself as follows:

| | | |
|---|---|---|
| April, 1½ days............................................................ | $ 5 25 |
| April, 6  " ...................................................... | 21 00 |
| April, 4½  " ...................................................... | 15 75 |
| May, 3  " ...................................................... | 10 50 |
| June, 6  " ...................................................... | 21 00 |
| June, 5  " ...................................................... | 17 50 |
| June, 6  " ...................................................... | 21 00 |
| June, 6  " ...................................................... | 21 00 |
| July, 5 days, last of June, 1 day....................................... | 21 00 |
| July, 6  " ...................................................... | 21 00 |
| July, 6  "  ·to 19th............................................... | 21 00 |
| In all 55 days in preparing this boat, | $192 50 |

He has also entered 40½ days' work during the same time as having been done on the boat by Walter S. Visger, aggregating $101.50. The evidence is such as to satisfy me that all this alleged work on the boat was not done. In addition it is claimed that Kenneth during most of the time, during those months, was working on the boat. Its proved condition on arrival at Alexandria Bay, late in July, shows that the work claimed was not done. However, it is clear that some work was necessarily done in fitting up the boat.

On the book, Exhibit B, page 1, the receipts for the 32 days the boat actually ran are put down as $1,352.25, and the expense, including firemen, captain, excluding the $50 paid himself as captain, etc., at $1,223.90. Balance in hand $128.35, and including such payment, balance is $78.35, to apply on such work as he actually performed.

Assuming that Walter L. Visger did the work charged for in fitting up the boat, $192.50, and also performed 35 days' work while the boat was running, $122.50, and only $235.65 is due him in any event.

If Walter L. Visger, acting as captain of this boat for a time actually, and then really in charge of her as the manager and agent for his wife, and in view of the agreement made with Burtch and Mr. De Laney, by virtue of which he was permitted to run the boat at all, had kept a daily account of receipts, the sources from which derived and by whom collected, and also a daily account of expenses paid, and when, where, and to whom paid, his claims would stand much better and appeal more strongly to the consideration of this court. Still it may be that there is due to Walter L. Visger $150, including such help as he had from his minor son prior to the 26th day of July, for work done on this boat while fitting her up, and while she was running, although this is questionable.

My conclusion is that the claim of Walter L. Visger be allowed and established on a quantum meruit at the sum of $150; that the claims of Kenneth Visger be wholly disallowed on the ground he was fully paid for all he did and all he earned, and that the claim of Walter S. Visger be wholly disallowed and rejected on the ground he was fully paid for all he did. I find that neither Walter S. nor Kenneth did as much work as claimed.

The claim of William Morford is allowed and established at the sum of $31.

That of Cornwall Bros. at $25.

That of Burtch on his lien for coal, etc., filed August 26th, and including the assigned claims of Olin Snyder and Thomas Thurston at $358.83.

The claim of Walter L. Visger may draw interest from November 5, 1913, and stand as the first lien or claim.

That of William Morford may draw interest from September 11, 1913, and stand as the second lien or claim.

That of George H. Burtch, on his lien (not mortgages) may draw interest from August 26, 1913, and stand as the third lien or claim.

That of Cornwall Bros. may draw interest from October 14, 1913, and stand as the fourth lien or claim.

The next lien in order is that of George H. Burtch on his mortgage of $782.94, with interest from July 1, 1913.

The next lien and claim in order is that of the mortgage of Francis Wilson, dated August 1, 1910, for $1,500, and interest thereon to September 1, 1910 when the payment of $300 will be deducted and interest on the balance added thereto to the date of decree.

The next lien and claim in order is that of Frank La Rue of $300, with interest from August 1, 1910.

There will be a decree or judgment establishing these claims and liens accordingly, and for a condemnation and sale of the boat, her engines, etc., and for the payment of the costs of such sale, etc., and then of such liens in the order named, out of the proceeds.

As to the libelants Kenneth Visger and Walter S. Visger, the libel is dismissed. No costs will be allowed.